## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                    **Case No. 1:22-cr-11-RJL**

**ZACHARY JOHNSON,**

      **Defendant.**

_____/

## DEFENDANT'S SENTENCING MEMORANDUM
## AND REQUEST FOR DOWNWARD VARIANCE

The Defendant, ZACHARY JOHNSON, by and through his undersigned attorney, hereby files this motion to this Honorable Court in the above-styled cause, respectfully requesting a downward variance to a sentence of **12 months and one day**, and as grounds therefore states the following:

## BACKGROUND

Mr. Johnson's parents are both drug addicts. *See* PSR ¶ 61. Both struggle with an addiction to methamphetamine that continues to this day. *See id.* As a result, when his parents divorced when he was six years old, Mr. Johnson moved in with his paternal grandparents. *See id.* Mr. Johnson had a good childhood with his grandparents. *See id.* Mr. Johnson only has contact with his parents when they are not using drugs. *See* PSR ¶ 62. Because his parents are currently using drugs, Mr. Johnson has had no contact with his parents for over six months. *See id.*

Mr. Johnson is also a recovering drug addict.  Mr. Johnson's favorite drug, when using, is methamphetamine.  However, he also has used alcohol, marijuana, cocaine, ecstasy, prescription opiates, and Xanax.  *See* PSR ¶ 74.  Mr. Johnson quit using drugs after his release from prison in 2014, but he began using hard drugs again after joining the Proud Boys prior to the events of January 6, 2021.  *See* PSR ¶ 74.  Mr. Johnson has been drug-free since January 2022, other than using marijuana gummies for back pain in April 2023.  *See* PSR ¶ 74, 76.  Mr. Johnson has suffered from anxiety and depression, which contributes to his drug use.  *See* PSR ¶ 73.

Mr. Johnson graduated from Marion High School in Marion, Indiana in 2006.  *See* PSR ¶ 77.  Mr. Johnson attended ITT Tech in St. Petersburg, Florida from 2012 to 2013 studying electrical engineering.  *See id.*  Mr. Johnson withdrew to accept a job.  *See id.*  Mr. Johnson is a master carpenter.  *See* PSR ¶ 78.  He also is trained as an electrician, plumber, and framer.  *See id.*  Mr. Johnson currently has his own business— Johnson Carpentry LLC.  *See* PSR ¶ 80.

Mr. Johnson married Lauren Cropley in 2019.  *See* PSR ¶ 63.  They share a four year old son Bryce Johnson.  *See* PSR ¶ 65.  Mr. Johnson and Ms. Cropley are separated.  *See* PSR ¶ 63.  His substance abuse was the cause.  *See* PSR ¶ 64.

Mr. Johnson currently dates Torrie Walters.  They have been together for about eighteen months.  A letter in support of Mr. Johnson from Ms. Walters is attached as Exhibit "A".

<u>MEMORANDUM OF LAW</u>

## I.    <u>SENTENCING GUIDELINES</u>

The United States Probation Office believes that Mr. Johnson's total adjusted offense level for count two is 21, criminal history category II.  PSR ¶ 88.  Therefore, Mr. Johnson's advisory sentencing guideline range is 41 to 51 months.  *See id.*  Mr. Johnson concurs.

## II.    <u>REQUEST FOR A DOWNWARD VARIANCE</u>.

### A.    <u>*Booker* and 3553 Factors</u>.

In the aftermath of *United States v. Booker*, 543 U.S. 220, 260-262 (2005), the sentencing guidelines are now advisory.  After hearing argument from the parties, the Court must consider the factors enumerated at 18 U.S.C. § 3553(a).  *See Gall v. United States*, 552 U.S. 38, 50 (2007).  The Court may not presume that the guidelines are reasonable.  *See id.* at 50.

The Section 3553(a) factors are:

(1)    The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    The need for deterrence;

(4)    The need to protect the public;

(5)    The need to provide the defendant with necessary educational training, vocational training and medical care;

(6)    The kinds of sentences available;

(7)     The Sentencing Guideline range;

(8)     Pertinent policy statements of the Sentencing Commission;

(9)     The need to avoid unwarranted sentencing disparities; and

(10)    The need to provide restitution to victims.

"The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing[.]" *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

"In sum, while the statute still requires the Court to give respectful consideration to the Guidelines (cites deleted), *Booker* 'permits the Court to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough, supra* (*quoting Booker*, 543 U.S. at 245-46).

**B.    The Nature and Circumstances of the Offense – Pepper Spray Is Not Typically a Dangerous Weapon.**

Defendant acknowledges that pepper spray, if used improperly, could be capable of causing serious bodily injury—specifically firing the liquid version of OC spray at close range could cause a mechanical injury to the eyeball.  *See* Exhibit "B", Report of Emanuel Kapelsohn Rendering Opinion on Dangerousness of Pepper Spray, pg. 15-16.  Similarly, a garden hose can cause the same injury.  *See id.*  As a result, Defendant does not object that the enhancement pursuant to USSG § 3A2.2(b)(2)(B) technically applies.  Because USSG § 3A2.2(b)(2)(B) applies, then the enhancement in USSG § 3A2.2(b)(2)(B) becomes six levels rather than three levels.  *See* USSG §

3A2.2(b)(2)(B); PSR ¶ 41.  Thus, because pepper spray is technically capable of causing serious bodily injury—no matter how unlikely—six levels are added to the guideline range.

Mr. Kapelsohn has rendered an expert opinion on Pepper Spray or OC Spray which is attached as Exhibit "B".  Mr. Kapelsohn has trained and certified law enforcement as firearms and use of force instructors, including, pepper spray, throughout the United States.  *See* Exhibit "B", pgs. 2, 4.  He has taught pepper spray or OC spray classes for over 25 years.  *See id.* at 6.  He has personally sprayed dozens of trainees.  *See id.*  He has been sprayed himself numerous times.  *See id.*

His conclusions are that since the mid-1980's:

> "hundreds of thousands of individuals—or more—have been pepper sprayed.  In the overwhelming majority of these instances of pepper spray, there have not only been no serious bodily injuries caused by the pepper spray, but no lasting effects after a relatively short period of time following the exposure.  Pepper spray is not a dangerous or deadly weapon as those terms are commonly used in law enforcement use of force training and police."

Mr. Kapelsohn explains that most OC training programs involve trainees being sprayed.  *See id.* at 13.  Some OC training programs require trainees to be sprayed.  *See id.*  Mr. Kapelsohn further points out that "law enforcement, correctional, and security officers and trainees, and OC instructor candidates, would not be sprayed with live OC if it were believed that OC was likely to cause death or great bodily injury."  *Id.*  And that is the crux of it: "pepper spray is not likely to cause death or great bodily

injury in the manner in which it commonly used." *See id.* at 17.  If it were, then pepper spray would not be used on trainees or for crowd control.  *See id.*

In short, it is technically correct that six additional levels should be added to the sentencing guidelines as a result of USSG § 3A2.2(b)(2)(B) and USSG § 3A2.2(b)(2)(B).  However, because Pepper Spray is unlikely to cause serious bodily injury, including under the circumstances in which it was used in Mr. Johnson's case, nor are we aware of any injuries from the use of the pepper spray in Mr. Johnson's case, the Court should take that into consideration in fashioning a downward variance.

**C.**  **The History and Characteristics of Mr. Johnson Justify a Downward Variance – Namely Growing Up in the Household of Two Drug Addicts.**

Both of Mr. Johnson's parents are meth addicts.  Sadly, but not surprisingly, Mr. Johnson followed in the footsteps of his parents.  His grandparents did a wonderful job of taking him out of that environment at the age of 6, but his parents undoubtably influenced his later drug addiction.  Mr. Johnson was using at the time of the instant offense.  Since January 2022, Mr. Johnson has been clean from meth and other hard drugs.  More importantly, Mr. Johnson has been working hard operating his own business.  Mr. Johnson has taken the corrective action necessary to get his life back on track.  His drug use has taken everything from him:  his wife, his child, and now his freedom.  Mr. Johnson has paid a very steep price for his drug use.

Mr. Johnson certainly believed President Trump when he repeatedly said that the election was stolen.  Mr. Johnson's passions were stirred by what he thought was

a coup d'état.  He greatly regrets what happened in this case, but certainly these were unique circumstances.  He was a drug addict who was influenced by the President of the United States.  Should he have acted differently?  Of course.  Were these circumstances normal?  Absolutely not.  Mr. Johnson now has his life headed in the right direction.  He is clean.  He has his own business.  He accepts responsibility for his actions.  A sentence of a year and a day would be sufficient to punish him, but also allow him to move forward with the immense progress in his life.

## III.  CONCLUSION.

For the foregoing reasons, Mr. Johnson would respectfully request a sentence of twelve months and one day.  He would ask for a recommendation for all possible drug treatment and mental health counseling.  Finally, he would ask to be housed as close to home as possible, so that he can see his son.  Home is the Tampa/St. Petersburg area.

Respectfully submitted,

A. Fitzgerald Hall, Esq.
Federal Defender
Middle District of Florida

/s/ *G. Ellis Summers, Jr.*
G. Ellis Summers, Jr., Esq.
Florida Bar No.0815691
Assistant Federal Defender
2075 West First Street, Suite 300
Ft. Myers, Florida 33901
Telephone: 239-334-0397
Fax:  239-334-4109
E-Mail: ellis_summers@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21st day of November, 2023, the foregoing was electronically filed with the Clerk of Court and a copy will be sent electronically to Michael Gordon, Assistant U.S. Attorney, 400 North Tampa Street, Suite 3200, Tampa, FL 33602 and Rebekah Lederer 601 D Street NW, Washington, DC 20001.

/s/ *G. Ellis Summers, Jr.*
G. Ellis Summers, Jr., Esq.
Assistant Federal Defender